**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT**

Eastern District of Kentucky
**F I L E D**

JUN 2 2 2020

AT FRANKFORT
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**UNITED STATES OF AMERICA**

V.

**INFORMATION NO.** 3:20-cr-7 GFVT
**18 U.S.C. § 1347**

**MICHAEL NORMAN DUBE**

\* \* \* \* \*

**THE UNITED STATES ATTORNEY CHARGES:**

At all times relevant to this Information:

## BACKGROUND ON KENTUCKY MEDICAID

1. The Kentucky Medicaid Program ("Medicaid") was a "health care benefit program," as defined by 18 U.S.C. § 24(b), that provided benefits to Kentucky residents who met certain eligibility requirements, including income requirements. Medicaid was jointly funded by federal and state sources and administered by the U.S. Department of Health and Human Services, Centers for Medicare & Medicaid Services and by the Kentucky Cabinet for Health and Family Services, Department for Medicaid Services ("DMS"), located in Franklin County, Kentucky.

2. Among a variety of items and services, Medicaid provided coverage to beneficiaries for certain procedures and services, including urine drug testing ("UDT").

3. Medical service providers, including clinical laboratories ("service providers"), meeting certain criteria, could enroll with Medicaid. Upon Medicaid

enrollment, service providers were permitted to provide medical services and items to beneficiaries, and subsequently submit claims, either electronically or in hardcopy, to Medicaid, through fiscal intermediaries, seeking reimbursement for the cost of services and items provided.

4.  When seeking reimbursement from Medicaid, service providers certified that: (1) the contents of the claim forms were true, correct, and complete; (2) the claim forms were prepared in compliance with the laws and regulations governing Medicaid; and (3) the services purportedly provided, as set forth in the claim forms, were medically necessary.

5.  Medicaid, through DMS, and through its fiscal intermediaries, ultimately reimbursed claims submitted by Medicaid-enrolled service providers, including for laboratory services and UDT, from Franklin County, Kentucky.

## **REIMBURSEMENT FOR URINE DRUG TESTING**

6.  When seeking reimbursement from Medicaid, service providers submitted the cost of the service or item provided together with the appropriate "procedure code," as defined by the American Medical Association, and set forth and maintained in the Current Procedural Terminology ("CPT") Manual or by the Healthcare Common Procedure Coding System ("HCPCS"). Although service providers submitted the cost of the service provided, together with other information, Medicaid reimbursed providers designated amounts according to the CPT or HCPCS code utilized.

7.  UDT was divided into two categories: presumptive (qualitative) testing and

definitive (quantitative or confirmation) testing. Presumptive testing identified which substances, if any, were present in the provided specimen. Definitive testing identified how much of a particular substance was present in the provided specimen.

8. Medicaid, through its intermediaries, only paid claims for procedures and services referred and performed by Medicaid-enrolled providers.

### THE DEFENDANT AND RELEVANT ENTITIES

9. The Defendant, **MICHAEL NORMAN DUBE**, was a physician residing in or around Johnson City, Tennessee.

10. In May of 2013, **DUBE** and his wife, Regan Dube ("Regan"), established American Toxicology Labs LLC ("ATL") as a Limited Liability Company in Tennessee, with Regan serving as the company's registered agent. **DUBE** and Regan designated their home address as ATL's principal office and mailing address.

### THE SCHEME TO DEFRAUD

11. On March 10, 2011, **DUBE** pleaded guilty to one count of knowingly and intentionally omitting material information from reports, records, and documents required to be kept under the Controlled Substances Act, in violation of 21 U.S.C. § 843(a)(4)(A), and one count of knowingly and willfully making a false, fraudulent, and fictitious material statement and representation to the Drug Enforcement Administration, in violation of 18 U.S.C. § 1001.

12. By letter dated June 29, 2012, the Department of Health and Human Services, Office of the Inspector General ("HHS-OIG") notified **DUBE** that, as a result of his

convictions, he was excluded from participating in any capacity in Medicare, Medicaid, and any other federal health care programs as defined by § 1128B(f) of the Social Security Act, for a statutory period of five years. The June 29, 2012, letter also explained that reinstatement would not be automatic, and that **DUBE** would have to apply for (and be granted) reinstatement.

13. Despite his exclusion, **DUBE** and his wife, Regan, established ATL in 2013 and enrolled ATL in Kentucky Medicaid in April 2014. **DUBE** concealed his involvement with ATL so that Kentucky Medicaid would approve ATL's Kentucky Medicaid application and pay claims that ATL submitted, which it would not have done had it known the extent of **DUBE's** involvement.

14. ATL performed UDT ordered by physicians in several states. This included UDT ordered by physicians at EHC Medical, which held itself out as a narcotic treatment program focusing on opioid dependency, with locations in Harriman and Jacksboro, Tennessee. With **DUBE's** knowledge and consent, ATL billed Kentucky Medicaid for UDT performed on specimens from Kentucky Medicaid beneficiaries. In some instances, also with **DUBE's** knowledge and consent, ATL's employees submitted claims to Kentucky Medicaid falsely using the name of Kentucky Medicaid providers as the ordering provider, even when non-Kentucky Medicaid providers actually saw the patient and ordered the UDT, in order to secure reimbursement to which ATL was not entitled. In turn, Kentucky Medicaid reimbursed ATL for claims it submitted for UDT.

## COUNT 1
## Health Care Fraud
## (18 U.S.C. § 1347)

15. Paragraphs 1 through 14 of this Information are realleged and incorporated by reference as though fully set forth herein.

16. Beginning at least in or around April 21, 2014, and continuing through at least on or about November 14, 2019, in Franklin County, in the Eastern District of Kentucky, and elsewhere,

### MICHAEL NORMAN DUBE

aided and abetted by others known and unknown, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme or artifice to defraud a health care benefit program affecting commerce, as defined in 18 U.S.C. § 24(b), that is, Kentucky Medicaid, and obtain, by means of materially false and fraudulent pretenses, representations, and promises, and omission and concealment of material facts, money and property owned by, and under the custody and control of, Kentucky Medicaid, in connection with the delivery of and payment for health care benefits, items, and services, to wit, submitting or causing American Toxicology Labs LLC to submit claims for urine drug testing to Kentucky Medicaid by fraudulently misrepresenting that American Toxicology Labs LLC was entitled to reimbursement for those claims.

## FORFEITURE ALLEGATIONS
### 18 U.S.C. § 982(a)(7)

1. Upon conviction of Count 1 contained in this Information, the defendant, **MICHAEL NORMAN DUBE** shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(7), the property listed below that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense:

### MONEY JUDGMENT:

$1,756,950.34, which sum represents the gross proceeds in aggregate obtained by the defendant as a result of the aforesaid violations.

*[signature]*

**ROBERT M. DUNCAN, JR.**
**UNITED STATES ATTORNEY**

## PENALTIES

**COUNT 1:** Not more than 10 years imprisonment, a fine of not more than $250,000 or the greater of twice the gross gain or twice the gross loss, and supervised release of not more than 3 years.

**PLUS:** Mandatory special assessment of $100 per count.

**PLUS:** Restitution, if applicable.

**PLUS:** Forfeiture as listed.